IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| INTEGRATED SERVICE SOLUTIONS, INC. | : | CIVIL ACTION |
| | : | |
| Plaintiff | : | |
| v. | : | |
| | : | |
| DENNIS M. RODMAN | : | |
| | : | |
| Defendant | : | NO. 07-3591 |

**MEMORANDUM OPINION**

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                                November    3, 2008

      This matter has been assigned to the undersigned for purposes of "all pre-trial rulings" at the request of the parties and with the agreement that our decision shall represent the decision of the district court.  (*See* Doc. No. 44 (stipulation); Doc. No. 51 (Judge Brody's Order approving the stipulation).)  Before the Court for resolution are two motions (Doc. Nos. 53 & 81) that arise due to a discovery dispute involving Plaintiff, Integrated Service Solutions, Inc. ("ISS"), and a non-party, VWR International, LLC ("VWR"), upon whom ISS served a subpoena.  As these parties[1] have reached an impasse after initial agreement upon a protocol to address concerns about the production of commercially sensitive documents, it has been necessary for us to render a determination with respect to these still outstanding motions.  We have received letter briefs and conducted telephone conferences with the parties concerned in an effort to resolve the remaining disputes and bring the discovery period to a conclusion.  At our request, the parties have submitted forms of order.  We decline to accept either proposed form of order for the reasons set out in this memorandum opinion and instead enter our own order.

---

      [1] Our reference to "parties" is to parties to this dispute, ISS and VWR, not parties to the litigation, ISS, Dennis Rodman, and Joseph Urricchio.

**Background**

Plaintiff served subpoenas upon various non-parties to the litigation in February and March of 2008. On March 19, 2008, VWR, one of the non-parties served, voiced its objections concerning both the reach of the subpoena into confidential information and the burden of compliance with the broad scope of the subpoena. Nonetheless, VWR expressed its willingness "to work with ISS to determine whether [VWR] is in possession of relevant nonprivileged and nonconfidential documents" and to determine if there were requests ISS could make that would not impose an undue burden on VWR. (*See* Letter from Meredith Slawe to David Kraut dated March 19, 2008 (Doc. No. 53-6).) On March 21, 2008, VWR filed a motion pursuant to Fed. R. Civ. Proc. 45 to quash the subpoenas. (Doc. No. 42.) On April 2, 2008, ISS filed a motion, also pursuant to Fed. R. Civ. Proc. 45, seeking the entry of an order compelling VWR to produce certain materials in compliance with the subpoena served and for an order finding VWR in contempt for interfering with the subpoenas served on others. (Doc. No. 53.)

Pursuant to an Order entered on March 31, 2008, the Honorable Anita B. Brody referred to us the resolution of all non-dispositive pre-trial matters. (Doc. No. 51.) We held a hearing on VWR's motion and other discovery matters on April 16, 2008. On May 1, 2008, we issued an Order granting in part and denying in part all of the motions that were the subject of the hearing. (Doc. No. 61.) That Order also recognized that ISS and VWR were engaged in efforts to resolve the issues presented by ISS's motion to compel compliance by VWR and therefore stayed the time for VWR to respond to ISS's motion. (Doc. No. 61, ¶ 15.)

As the discovery period was set to come to a close in October 2008, we were advised by counsel that the matter had not been resolved and that it might become necessary for us to rule on the ISS motion to compel. Although we did not require VWR to file a formal response to the

April 2, 2008 motion, we have received various letter briefs from the parties and further benefitted from their argument in an unrecorded telephone conference held on October 17, 2008. This matter is now ripe for resolution.

We also heard argument from Plaintiff and Defendant Dennis Rodman on Plaintiff's Motion to Modify Scheduling Order (Doc. No. 81).  The basis for the additional thirty days of discovery requested by ISS was to allow it sufficient time to receive and review a report it anticipated from VWR regarding an analysis of a VWR laptop computer and to conduct any depositions related to that data.  (Doc. No. 81.)  (*See also* Tr. of Tel. Conf., October 7, 2008 (Doc. No. 84).)  This motion is also ripe for resolution.

**Material Sought in Motion to Compel**

ISS's subpoena to VWR sought the production of, *inter alia,* responsive electronic data concerning ISS and/or Dennis Rodman.  ISS contends that the scope of the subpoena encompassed all computers owned by VWR, including the VWR laptop computer used by Defendant Dennis Rodman when it was assigned to his wife, former VWR employee Kim Rodman.[2]  VWR does not challenge ISS on the threshold question as to whether the data in this laptop falls generally within the scope of the subpoena.  It is this laptop that is at the center of this remaining unresolved discovery issue.

As is evident from copies of various communications between ISS and VWR counsel in the spring of 2008, ISS sought to have the VWR laptop computer "analyzed" (*see* E-mail from David Kraut to Michael McTigue dated May 6, 2008, forwarding e-mail from Kevin Faulkner),

---

[2] As is set forth more fully in the complaint, ISS alleges that Dennis Rodman improperly accessed information stored on ISS's computer systems and, *inter alia*, misappropriated and disseminated ISS's confidential and proprietary information through e-mail communications.

3

presumably to determine whether it contained (or once contained) any documents responsive to the subpoena.  Counsel for VWR voiced VWR's objection to giving ISS "direct access" to its IT system and asked that ISS tell him "what you would like us to search for and, assuming it is relevant, we will search for it or hire (at [ISS's] expense), a third party to conduct the search" for VWR.  (*See* E-mail from Michael McTigue to David Kraut dated May 6, 2008.)  The parties agreed that the search would be conducted by a neutral party, PricewaterhouseCoopers ("PWC").  VWR counsel noted that the cost would depend "on the exact queries that [ISS is] looking for."  (*See* E-mail from Michael McTigue to David Kraut dated June 13, 2008.)  That communication also made clear that VWR's counsel "will retain control over the project" and that counsel "will be the conduit through which the search results are communicated."  (*Id.*)

      ISS subsequently had its computer forensics expert prepare a "checklist" proposal of steps, *inter alia*, to search for particular keywords in computer files, to prepare various reports on usage, and to check for evidence of any mass wiping or deletion of data.  (*See* E-mail from Stephen Maliszewski to Michael McTigue dated July 21, 2008.)  When ISS counsel obtained his client's authority to engage PWC, he asked VWR for confirmation that PWC "will conduct the analysis pursuant to the forensic checklist I earlier provided [to Mr. McTigue] and that a written report containing the search results will be generated and provided to ISS."  (*See* E-mail from Stephen Maliszewski to Michael McTigue dated July 30, 2008.)  (*See also* E-mail from Stephen Maliszewski to Michael McTigue dated August 27, 2008 (referring to "PWC's report"); reply of August 28, 2008 (not responding to issue of a report).)  The record before us does not contain any "confirmation" or other written response reflecting an agreement as to what would be done with the information yielded by PWC's analysis.  Subsequent communications between counsel referred only to the "analysis" by PWC that was still outstanding as the discovery deadline

4

loomed.  (*See, e.g.,* E-mail from Stephen Maliszewski to Michael McTigue dated August 18, 2008; E-mail from Stephen Maliszewski to Meredith Slawe dated August 20, 2008; E-mail from Stephen Maliszewski to Michael McTigue dated August 26, 2008; E-mail from Stephen Maliszewski to Michael McTigue dated September 5, 2008.)  Some concern was expressed by VWR counsel that particular search words were overbroad and would "likely reach competitive information that is irrelevant to this litigation."  (*See* E-mail from Michael McTigue to Stephen Maliszewski dated September 2, 2008.)  VWR counsel also objected to "conduct[ing] a search for [an overly broad] term, gather[ing] documents, and then discuss[ing] with [ISS counsel] whether [he] want[s] to see what was found."  (*See* E-mail from Michael McTigue to Stephen Maliszewski dated September 5, 2008.)

PWC ultimately performed an analysis of the laptop computer and billed ISS (through VWR) $9,571 for its services.  PWC provided VWR with the files that contained "hits" for the search terms contained on the list supplied by ISS.  (McTigue Letter-Brief dated October 23, 2008.)  VWR's counsel, through an associate, Ms. Slawe, who was familiar with this litigation, then reviewed the accessible files provided by PWC to determine whether they were relevant to the litigation.  She concluded that they were not and provided a declaration to that effect.  (*Id.* and Slawe Decl. dated October 23, 2008.)  VWR's counsel then advised counsel for ISS by letter that PWC had completed the laptop analysis; that there was no evidence of any data wiping; that most of the search terms did not result in any file "hits"; and that a review by counsel of the accessible files that did contain "hits" (except for the 3,000 files containing the term "performance," which were not reviewed) did not "relate in any way to the allegations or the underlying issues in" the litigation.  (Letter from Michael McTigue to Stephen Maliszewski dated October 10, 2008.)

ISS believes that it is entitled to more. (Maliszewski Letter-Brief dated October 20, 2008 at 2.) ISS has presented the Court with a form of order compelling VWR to comply with the subpoena by producing to ISS a written report from PWC detailing PWC's inspection; identifying the search results for each search term; producing copies of all files identified by each search term; and describing the chain of custody and the forensic tools employed. (*Id*. at Prop. Order.) The proposed order provides for VWR to "redact from PWC's report prior to production all materials that VWR deems to constitute commercially sensitive information." (*Id.*)

VWR contends that it has done all that is required of it. It contends that there was never an agreement that it would provide a report to ISS, and counsel has represented that PWC did not create a report regarding the analysis conducted. VWR asserts that it "would have worked out a mutually agreeable way for ISS to review the responsive documents" had the analysis yielded any documents relevant to the litigation but that this was not necessary because the analysis revealed that the laptop contained no relevant documents or data. (McTigue Letter-Brief dated October 23, 2008 at 3.) Separate and apart from the issuance of a report, then, it is apparent that the parties disagree as to what VWR is required or permitted to do to satisfy its obligations to comply with the subpoena: VWR objects to their production of files that were discovered through the search for the checklist terms as not relevant to the litigation and ISS objects to VWR making the relevance determination. (*See, e.g.,* Letter from Stephen Maliszewski to Michael McTigue dated October 13, 2008.)

**Discussion**

ISS seems to concede that it would not have a right under the Federal Rules of Civil Procedure to documents from VWR's computer that are not related to the allegations, claims or defenses at issue in this litigation or which are not reasonably likely to lead to the discovery of evidence that would be admissible in this litigation. *See also* F.R.C.P. 26(b)(1) (providing that the scope of discovery in general reaches only matter "that is relevant to any party's claim or defense" and defining relevant information to include admissible evidence and information that "appears reasonably calculated to lead to the discovery of admissible evidence"). Counsel for ISS has asserted, however, that it operated pursuant to an understanding that VWR nonetheless would provide all responsive documents to it, save only for redaction of any confidential, commercially sensitive information. ISS would, of course, have the burden to demonstrate this agreement. Having reviewed the written communications on this issue as presented by the parties, we do not see clear evidence of an agreement to produce all documents regardless of relevance.[3]

ISS has not come forward with any showing of bad faith or any other indicia of unreliability in the representation of counsel for VWR, and as formalized in the declaration of Attorney Slawe, that the only responsive documents found on the laptop are irrelevant.[4] We

---

[3] We are particularly mindful of the fact that VWR — which is not a party to this dispute — is a competitor of ISS and that the search terms employed in the analysis of the laptop were often quite broad. We perceive that there would, in fact, be a significant burden imposed upon this non-party to redact data and to assess the danger of providing a competitor with its business documents even in redacted form.

[4] While the declaration is arguably deficient in that it fails to set out Ms. Slawe's understanding of the claims and defenses at issue in this litigation, we note that she was counsel of record to Kim Rodman when Mrs. Rodman was a defendant. Absent evidence to the contrary, we are prepared to accept that she has a sufficient understanding of the nature of the claims and

view ISS as bearing the burden, on its motion to compel, to show that VWR is withholding relevant evidence (or documents that appear reasonably calculated to lead to the discovery of admissible evidence). It has not satisfied that burden. Therefore, in the absence of any reason to do otherwise, we accept the representation made by counsel for VWR, in counsel's letters both to ISS and the Court as well as in the declaration of Attorney Slawe, that counsel determined that "[n]one of the documents provided by PWC related in any way to the allegations, claims or defenses asserted in the Litigation. And, none of the documents are reasonably likely to lead to the discovery of admissible evidence in the Litigation." (Slawe Decl. dated October 23, 2008.) We will not require this non-party, VWR, to permit ISS to thumb through an electronic file drawer to double-check VWR's document review on this point.

We do, however, see sufficient evidence of an understanding that ISS would receive some written statement from PWC as to the means and methods utilized in conducting the search, some broad description of the types of documents identified by the search, and confirmation that there was no evidence of "wiping" or improper deletion of data. This would enable ISS to confirm that the search terms were applied properly. Therefore, we will not preclude ISS from obtaining from PWC (through VWR) a report on the services it performed for which ISS has already been billed. ISS must, however, exercise this option promptly and will be responsible for any additional costs associated with the production of any such report.

Our Order follows.

---

that she is mindful of her responsibility when submitting her declaration to the Court.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| INTEGRATED SERVICE SOLUTIONS, INC. | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | |
| DENNIS M. RODMAN | : | |
| Defendant | : | NO. 07-3591 |

### ORDER

AND NOW, this 3rd day of November, 2008, and upon consideration of Plaintiff's Motion to Compel (Doc. No. 53), the letter briefs of the parties involved submitted on October 20 and 23, 2008, the argument of counsel at the unrecorded telephone conference on October 17, 2008, and for the reasons set forth in the accompanying memorandum opinion, **IT IS HEREBY ORDERED THAT** said motion is **DENIED** subject only to Plaintiff exercising an option, within seven days of entry of this Order and at its expense, to request of VWR a report from PricewaterhouseCoopers as to the means and methods utilized in conducting the laptop analysis, some broad description of the types of documents identified by the search, and confirmation that there was no evidence of "wiping" or improper deletion of data.[1]

Upon consideration of Plaintiff's Motion to Modify Scheduling Order (Doc. No. 81), Defendant's opposition thereto, and the arguments provided at the telephone conference on October 7, 2008, and in light of the delayed resolution of the laptop inspection, **IT IS HEREBY ORDERED THAT** said motion is **GRANTED** and that paragraphs 1 and 2 of the scheduling

---

[1] VWR shall then use its best efforts seek to expedite the production of such a report by PWC.

order entered on February 1, 2008 and modified on June 19, 2008 are further modified as follows:

   1.  Pretrial timetable:

   • All discovery shall be completed by **November 14, 2008**.

   • Plaintiff's expert reports due **December 3, 2008**; Defendant's reports due **December 17, 2008**; depositions of all experts to be completed by: **January 7, 2009**.

   • Dispositive motions due normally **January 14, 2009**.

   • Exchange of exhibits due **February 4, 2009**.

   • Plaintiff's pre-trial memorandum due: **February 4, 2009**.

   • Defendant's pre-trial memorandum due: **February 11, 2009**.

   • All motions in limine due: **February 4, 2009**.

   2.  This case will be placed into the trial pool on **February 25, 2009** or as soon thereafter as all dispositive motions have been decided.

                              BY THE COURT:

                              /s/ David R. Strawbridge
                              DAVID R. STRAWBRIDGE
                              UNITED STATES MAGISTRATE JUDGE