IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| INTEGRATED SERVICE SOLUTIONS, INC. | : | CIVIL ACTION |
| Plaintiff | : | |
| v. | : | NO. 07-3591 |
| | : | |
| DENNIS M. RODMAN | : | |
| Defendant/ | : | |
| Third Party Plaintiff | : | |
| | : | |
| v. | : | |
| | : | |
| JOSEPH URICCHIO | : | |
| Third Party Defendant | : | |

**<u>MEMORANDUM OPINION</u>**

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                    April        29, 2009

Plaintiff Integrated Service Solutions, Inc. ("ISS") brought this action against a former employee, Defendant Dennis M. Rodman ("Rodman"), asserting various claims arising from alleged unauthorized use of ISS's email and computer systems and alleged misappropriation and dissemination of confidential and proprietary information. Rodman then brought a counterclaim against ISS seeking to recover payments allegedly still due to him pursuant to his employment contract. ISS President Joseph Uricchio ("Uricchio") was also named as a third-party defendant on that claim. By stipulation and consent of the parties, accepted and approved by the Honorable Anita B. Brody, the case was referred to this Magistrate Judge "for all pre-trial rulings." (Doc. 44 at 1, ¶ 1; *see* Docs. 45 & 51.)[1] Presently before the Court for decision are: (1) ISS's motion for voluntary

---

[1] The parties have stipulated that this Magistrate Judge's rulings on pre-trial matters are deemed to be the rulings of the District Court and have waived any right to appeal the rulings to Judge Brody. (Doc. 44 at 1, ¶¶ 2-3.) During a recorded telephone conference with the parties following the filing of ISS's motions for voluntary dismissal and for summary judgment, the parties

dismissal; (2) Rodman's affirmative motion for summary judgment as to his counterclaim and third

party suit; and (3) ISS and Uricchio's motion for summary judgment as to Rodman's counterclaim

and third party suit.  While not presented in a separate motion, Rodman has also asked the Court to

impose sanctions against ISS and its counsel, citing to Rule 11.[2]  For the reasons set forth below, we

will grant ISS's motion for summary judgment, deny Rodman's motion and his request for Rule 11

sanctions, and grant ISS's motion for voluntary dismissal on the terms we consider appropriate.

## I.      FACTUAL AND PROCEDURAL BACKGROUND[3]

ISS provides equipment calibration, validation, and regulatory services to pharmaceutical and

biotechnology companies located in the mid-Atlantic region.  (*See, e.g.,* Am. Compl. [Doc. 31] at

1, ¶ 1.)  ISS tendered to Rodman an offer of employment as a field service technician on June 13,

2001, the terms of which were set forth in an offer letter.  (ISS Mot. Summ. Jmt. [Doc. 88 ] ¶ 3 &

Ex. C; Rodman Mot. Summ. Jmt. [Doc. 92] ¶ 1.)  The offer stated that Rodman would be "eligible

for" an incentive program (the "Rewards Program") "based on contract and project lead generation"

---

confirmed that they understood these motions to fall within the scope of the stipulation and that this
Magistrate Judge would decide them.

[2] All of the submissions relative to the pending motions on behalf of Rodman were filed *pro se*, as Rodman discharged his attorney in May 2008 and elected to proceed without seeking to obtain new counsel.  (*See* Docs. 64, 72.)

[3] We principally describe facts which do not appear to be disputed by the parties, looking to the parties' submissions.  ISS's response to Rodman's motion for summary judgment, for example, demonstrates which facts asserted in Rodman's motion that it does or does not dispute. Unfortunately, the filing that appears to represent Rodman's response to ISS's motion for summary judgment — his own motion for summary judgment — does not contain a response to the numbered averments of ISS's motion.  Where it appears to us that a fact is disputed, we describe it, mindful of the fact that, as to each motion for summary judgment, we must view the facts in the light most favorable to the non-moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

and that the incentive payments were "payable upon closure of business (i.e., purchase order)" and paid out on a quarterly basis.  (*Id.*)

Rodman received three payments under the ISS Rewards Program, the last on July 12, 2002.[4] (ISS Mot. Summ. Jmt. [Doc. 88] ¶ 6 & Ex. G.)  At some point, ISS decided to terminate the Rewards Program and discontinued it effective December 31, 2003.  (*Id.* ¶ 4 & Ex. H (Uricchio Aff. ¶ 3); Rodman Mot. Summ. Jmt. [Doc. 92] ¶ 3.)  ISS did not present Rodman with any documentation seeking his acquiescence to the discontinuation of the Rewards Program, nor did it provide employees with any written announcement about the discontinuation of the program.  (Rodman Mot. Summ. Jmt. [Doc. 92] ¶¶ 3, 5; ISS Ans. to Mot. Summ. Jmt. [Doc. 95] ¶¶ 3, 5.)  Rodman continued to work as an employee of ISS until ISS terminated his employment on September 29, 2006.  (ISS Mot. Summ. Jmt. [Doc. 88] ¶ 13; Rodman Mot. Summ. Jmt. [Doc. 92] ¶ 6.)

It is uncontested that the last payment made to any ISS employee pursuant to the Rewards Program was made on January 9, 2004 for earnings under the program in the last quarter of 2003. (ISS Mot. Summ. Jmt. [Doc. 88] ¶ 5 & Ex. H (Uricchio Aff. ¶¶ 4-5).)  ISS did not consider Rodman to have referred, suggested, or identified any leads for new business after 2002.  (ISS Mot. Summ. Jmt. [Doc. 88] ¶ 7 & Ex. H (Uricchio Aff. ¶ 7).)  Rodman has not asserted otherwise.  The parties appear to dispute, however, whether Rodman requested or demanded any additional compensation during the remainder of his tenure at ISS pursuant to the Rewards Program.  ISS, through its

---

[4] ISS has presented documentation that Rodman was paid what was listed on its internal records as a "Commission" during three quarters in 2001 and 2002.  This documentation reflects that the amount of the "Commission" was 1.25% of the "$" amount associated with a "Job No." and "Customer" name.  The parties have not presented us with the transcript of any portion of Rodman's deposition in which he may have been presented with documentation as to the payouts made to him in 2002 and 2003 and questioned further about them.

President, Uricchio, asserts that Rodman did not seek any payment under the program after July 2002.  (ISS Mot. Summ. Jmt. [Doc. 88] ¶ 8 & Ex. H (Uricchio Aff.) ¶ 8.)  Rodman, however, contends that he "continually brought to [his] immediate manager's attention . . . the failure of Mr. Uricchio to uphold his responsibility to pay rewards" following the discontinuation of the Rewards Program.  (Rodman Mot. Summ. Jmt. [Doc. 92] ¶ 5.)  While Rodman's papers speak of his complaint that rewards were not being paid, he has not presented any evidence of any application made by him, directed to his manager, Uricchio, or anyone else at ISS, for an incentive payment based upon the criteria of the Rewards Program as described in his offer letter.

ISS filed a complaint against Rodman on August 29, 2007, which it amended on February 12, 2008.  (Docs. 1, 31.)[5]  ISS's action alleged violations of the Computer Fraud and Abuse Act, tortious interference with contract, conversion, misappropriation of trade secrets, and breach of fiduciary duty.  Rodman first asserted a claim against ISS for unpaid incentive payments when he filed his answer to the complaint on October 1, 2007.  (Doc. 11.)  When he filed an amended answer and counterclaim on March 3, 2008, he also brought a claim against Uricchio.  (Doc. 36.)  The counterclaim includes a count against ISS for breach of contract on the theory that Rodman was entitled under the terms of his "employment contract" to be compensated for generating contract and project leads for ISS and that ISS's failure to have paid him incentive payments due under that contract constituted a breach.  He also brought counts against ISS and Uricchio individually under the Pennsylvania Wage Payment and Collection Law, 43 Pa. Cons. Stat. Ann. §§ 260.1, *et seq.* (the "WPCL"), asserting that the unpaid incentive commissions constitute earned and unpaid "wages."

_____

[5] The amended complaint did not alter the claims against Rodman but rather added claims against his wife.  She was subsequently dismissed as a party.  Therefore, the claims that remain against Rodman in the amended complaint are the same ones as set forth in the original complaint.

The matter proceeded to discovery, which involved, *inter alia*, the depositions of Rodman and Uricchio and the forensic examination of at least one computer to which Rodman had access during the period of his alleged misconduct.  In the context of a discovery dispute, the Court also heard testimony on June 17, 2008 from Catherine Peetros, ISS's Director of Marketing and Business Development, concerning the circumstances under which the alleged improprieties engaged in by Rodman came to light.  The discovery period closed on November 14, 2008.  (Doc. 86.)

Rodman has moved for summary judgment on his counterclaim and third party complaint and seeks entry of an award of $12,500 "in unpaid bonus pay," $85,075 "in attorney's fees," and any other "penalties, damages, etc." that the Court may deem appropriate under the WPCL.[6]  (Rodman Mot. Summ. Jmt. [Doc. 92] ¶ 8.)  ISS and Uricchio jointly have also moved for summary judgment as to Rodman's counterclaim and third party complaint.  Prior to the filing of either of the summary judgment motions, ISS suggested to Rodman that they stipulate to a dismissal of the entire action, as ISS determined that it did not wish to further continue the litigation in light of "substantial additional costs involved."  (Mot. Vol. Dism. [Doc. 87] ¶¶ 5, 7.)  Because Rodman did not accept that suggestion, ISS filed a formal motion seeking the dismissal of its own complaint.  In response, Rodman suggests that ISS's complaint should not be dismissed until sanctions in the amount of $85,075 — "the legal fees generated by Dennis Rodman as of January 5, 2009" — are entered pursuant to Rule 11 against ISS and its counsel.  (Resp. to Pl.'s Mot. Vol. Dism. [Doc. 93] at 9.)[7]

_____

[6] An employee who prevails on an WPCL action may recover "reasonable attorneys' fees." 43 P.S. §260.9a.  The Act also provides, in appropriate circumstances, for a liquidated damages award of 25% of the total unpaid wages due to the employee.  *Id.* § 260.10.

[7] While the motions for summary judgment were filed before the deadline for dispositive motions set under the last scheduling order (Doc. 86), the discovery period had already closed on November 14, 2008.  (*Id.*)  ISS filed its summary judgment motion concerning the counterclaim

We first address the cross-motions for summary judgment on Rodman's counterclaim and then address the issue of the propriety of ISS's request that the Court dismiss, without prejudice, its amended complaint.

## II.   CROSS-MOTIONS FOR SUMMARY JUDGMENT ON THE COUNTERCLAIM / THIRD PARTY COMPLAINT

### A.   Summary Judgment Standards

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In conducting this analysis, the court must view all reasonable inferences drawn from the facts in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).  An issue is "genuine" under Rule 56(c) if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is "material" if it might affect the outcome of the case under governing law.  *Id.*  "[T]he mere existence of *some* alleged factual dispute between the parties," however, does not preclude summary judgment; rather, "the requirement is that there be no *genuine* issue of *material* fact."  *Id.* at 247-48 (emphasis in original).

To support a summary judgment motion, the moving party may attach affidavits or otherwise identify supporting materials in the pleadings, disclosures, or discovery materials on file in the

_____

first.  (Doc. 88, filed November 13, 2008.)   We stayed further briefing while we explored the possibility of a settlement.  (*See, e.g.*, Doc. 90 (Order of 11/21/08).)  Although our Order of December 4, 2008 (Doc. 91) directed Rodman to file his "response" to the summary judgment motion before January 5, 2009, his only subsequent submissions were his response to ISS's motion to dismiss the complaint and his own affirmative summary judgment motion.  We will consider Rodman's motion for summary judgment to also serve as his response to ISS's motion.

action.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).  "To prove that no genuine factual issues exist, a movant must present a factual scenario without any 'unexplained gaps.'"  *National State Bank v. Federal Reserve Bank of N.Y.*, 979 F.2d 1579, 1581 (3d Cir. 1991) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 (1970)).  The party bearing the ultimate burden of proof on the claim at trial has a more stringent burden of production when it seeks summary judgment: its motion must establish the absence of a genuine factual issue.  *National State Bank v. Federal Reserve Bank of N.Y.*, 979 F.2d 1579, 1582 (3d Cir. 1991).  By contrast, when a party that does not bear the burden of persuasion at trial seeks summary judgment, it need only point to or illustrate an absence of evidence supporting the case of the non-moving party.  *Celotex*, 477 U.S. at 323-25.  Once a moving party has satisfied its burden of production, the burden shifts to the non-movant to show, by setting forth specific facts, that there is a genuine issue for trial.  *Anderson*, 477 U.S. at 250.  The evidence to which the non-moving party points must be more than "merely colorable"; if it is not "significantly probative," that is, sufficient evidence for a jury to return a verdict in favor of that party, summary judgment may be granted.  *Id.* at 249-50.  Ultimately, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251-52.

      **B.**     **Breach of Contract Claim**

            **1.**     **The parties' contentions**

      In the first count of his counterclaim, Rodman contends that he accepted employment with ISS effective July 2, 2001 (his first date of employment) "pursuant to the Employment Contract," that is, the letter dated June 13, 2001 from Uricchio to Rodman describing certain terms of employment, which Rodman accepted with his signature, also dated June 13, 2001. (Am. Countercl.

[Doc. 36] ¶ 1.  *See also* Ans. to Am. Compl. [Doc. 36] ¶ 6 (defining "Employment Contract" as June 13, 2001 letter appended thereto as Exhibit A).)   After identifying Rodman's initial position, anticipated start date, base compensation rate, and describing his car allowance, the Employment Contract continued:

> You will be eligible for our REWARDS incentive program based on contract and project lead generation.  Rewards are payable upon closure of business (i.e. purchase order).  These will be paid on a quarterly basis.  The pay out is at a rate of 1.25% of the order value. This program covers new contract leads, and projects (includes labor, equipment and materials).  It excludes routine corrective maintenance labor and parts.

(*Id.* at Ex. A.) Rodman contends that under the terms of this paragraph of the Employment Contract, he "was to be compensated by [ISS] for generating contract and project leads for [ISS]" and that in detrimental reliance upon this provision, he "generated substantial contract and project leads for [ISS]" at sixteen specified client sites.   (Am. Countercl. [Doc. 36]  ¶¶ 2, 4.)  He contends that ISS breached the Employment Contract "by failing and refusing to pay to [Rodman] the incentive payments earned under the Employment Contract."  (*Id.* ¶ 5.)  In contrast to his counseled amended counterclaim, however, in his *pro se* motion for summary judgment, Rodman contends that the Rewards Program was not only related to "new contract and project lead generation" but also constituted "a reward for completing projects on time and efficiently."  (Rodman Mot. Summ. Jmt. [Doc. 92] ¶ 2.)  This appears to be consistent with his deposition testimony reflecting his asserted understanding that the Employment Contract entitled him to a bonus of 1.25% of his individual billings upon completion of a project and that it represented payment for his "successfully completing" a project.  (*See, e.g.,* Rodman Dep. at 80-84, *appended to* ISS Mot. Summ. Jmt. [Doc. 88] as Ex. I.)  Because the position Rodman held with ISS "was based solely on project work," he

further contends that he was "entitled [to] the rewards for the duration of [his] employment with [ISS]." (Doc. 92 ¶ 2.) It is apparent, therefore, that Rodman is not now prosecuting a claim based on new business that he may have successfully directed to ISS but rather based on his performance in engagements generated by others.

ISS contends that the Employment Contract provided for a reward only in the case of leads for new contracts or projects and that the payment would be made upon closing of the new order, not when work on the project was completed. It asserts that Rodman's claim as currently postured fails because it is based on a faulty reading of the Contract. (Br. in Supp. of ISS Mot. Summ. Jmt. [Doc. 88] at 6-7.) Alternatively, ISS contends that there was no breach of contract because it retained the ability, as the employer in an at-will employment relationship, to modify the terms of the employment relationship. (*Id.* at 7 (citing *Trainer v. Laird*, 183 A. 40 (Pa. 1936), for proposition that a contract of hiring can be modified without limitation by employer or employee). It contends that its discontinuation of the Rewards Program as of December 31, 2003 was a permissible modification and that Rodman effectively acquiesced to the modification by continuing to work for ISS for nearly three more years. (*Id.* at 7-9.)

### 2.    Analysis

Under Pennsylvania law, which governs this diversity action, "[w]here the meaning of a contract is clear and unambiguous, its interpretation and construction are for the court, not the jury." *Hewes v. McWilliams*, 194 A.2d 339, 342 (Pa. 1963). Fundamentally the task is to "ascertain and give effect to the intention of the parties.'" *Lower Frederick Twp. v. Clemmer*, 543 A.2d 502, 510 (Pa. 1988). "[W]hen a written contract is clear and unequivocal, its meaning must be determined by its contents alone. It speaks for itself and a meaning cannot be given to it other than that

9

expressed.'" *Kiewit Eastern Co., Inc. v. L & R Construction Co., Inc.*, 44 F.3d 1194, 1199 (3d Cir. 1995) (quoting *Steuart v. McChesney*, 444 A.2d 659, 661 (Pa. 1982)).  The determination of whether ambiguity exists in a contract is for the court to make as a matter of law.  *Id.*; *Hutchison v. Sunbeam Coal Corp.*, 519 A.2d 385, 390 (Pa. 1986).  A provision of a contract is ambiguous if it is susceptible to more than one interpretation.  *See, e.g., Younis Brothers & Co v. CIGNA Worldwide Ins. Co.*, 889 F. Supp. 1385, 1392 (E.D. Pa. 1995).  A court is not to distort the meaning of language to establish ambiguity.  *Steuart*, 444 A.2d at 663.  Only if there is ambiguity might a trier of fact be called upon to resolve conflicting parol evidence relevant to what the parties intended by the ambiguous provision.  *Hutchison*, 519 A.2d at 390.  However, "'if the meaning after taking parol evidence, if any, into account is so clear that no reasonable man could reach more than one conclusion as to the meaning of the writing under the circumstances, the court will properly decide the question of fact for itself as it may any question of fact which is equally clear.'  4 Williston on Contracts § 616, pp. 661-663 (3rd. ed. 1961)."  *Hewes*, 194 A.2d at 342.

The interpretation that Rodman posits at this point in the litigation — that the Rewards Program provided him additional compensation based upon a project well done — appears to derive from a poorly-placed comma in a portion of the Employment Contract.  Rodman seizes upon the fact that the paragraph dealing with the Rewards Program states that it "covers new contract leads, **and projects** (includes labor, equipment, and materials.)"  (Rodman Mot. Summ. Jmt. [Doc. 98] ¶ 2 (emphasis altered).)  Looking at the Employment Contract as a whole, we do not find the section describing the Rewards Program to be amenable to this interpretation such as to render the contractual provision ambiguous.

We conclude, as a matter of law, that the Employment Contract did not provide for the

payment of a bonus to Rodman simply for completing the projects that were the nature of his job when he was employed as a field service specialist with ISS.  First, when the relevant paragraph of the Employment Contract is read as a whole, it is clear that the program described was an incentive program for *new* business generation, and that the newly-generated business that was subject to the incentive reward could be a new contract (presumably with a new client or a new location) or a new project (presumably building upon an existing client relationship).  The first sentence of the paragraph makes it clear: "You will be eligible for our REWARDS incentive program **based on contract and project lead generation**."  (Emphasis added.)[8]  Second, the event triggering an entitlement to an award under this program was not described as the completion of the project but rather the "closure of business."  The only reasonable interpretation of this language is that it refers to the acceptance of the purchase order or other form of agreement by a client to contract with ISS. In addition, the amount of the payout was based on the "order value," "includ[ing] labor, equipment and materials," and not the various individuals' personal billings while carrying out the assignment for that customer, which would be just "labor."  In addition, the specific exclusion from the Rewards Program for orders for "routine corrective maintenance labor" is further evidence of the Rewards Program's focus upon new contract generation, not maintenance of or performance under existing contracts. Therefore, the efficient or otherwise satisfactory completion by Rodman of his projects at various client sites would not render him eligible for any reward in accordance with the program described in the Employment Contract.  To be sure, under Rodman's theory, all employees working

---

[8] Unlike in the later iteration of this provision, which describes what the Rewards program "covers," there is no question that the terms "contract" and "project" in this opening sentence of the Rewards paragraph each modify the term "lead generation."  It is clear that eligibility is based only upon lead generation and not "contract leads and projects."  This sentence cannot be read to provide that rewards could be payable based simply upon fulfillment of a "project."

on a project would earn some sort of reward payment upon completion of the project, a result that would not appear to be at all consistent with the intent reflected in the language of the Employment Contract.[9]

ISS has met its burden on its motion for summary judgment to demonstrate an absence of evidence supporting Rodman's position that he had a contractual right under the Employment Contract to Rewards payments for successful completion of projects.  It has done so by reference to the contract language itself.  This shifts the burden back to Rodman, who bears the ultimate burden of persuasion at trial, to show that there is some genuine issue still for trial.  Rodman has not responded in this precise posture, since he did not file a response to ISS's motion for summary judgment but rather filed a competing motion for summary judgment.  His own motion merely offers his competing interpretation that, under the language of the contract, one "aspect" of the Rewards Program was that ISS would pay "a reward for completing projects on time and efficiently" and that, because his position "was based solely on project work," he was "entitled to the rewards for the duration of [his] employment with [ISS]."  (Rodman Mot. Summ. Jmt. [Doc. 92] ¶ 2.)  For the reasons outlined above, we do not agree that the contract reasonably bears his interpretation, and Rodman points to no other basis for his claim that ISS agreed to pay him any incentive payments or other bonus.[10]

_____

[9] The details of such a program were also not at all spelled out in the Employment Contract. When asked at his deposition about how the program as he envisioned operated, Rodman explained that he understood the bonus to be based on his own personal billings. He was unable, however, to point to language in the Employment Contract that supported that interpretation. (Rodman Dep. at 82-85.)

[10] Rodman's pleading of his counterclaim initially based his entitlement under the Rewards Program to lead generation. He has not, however, pursued that theory in the summary judgment briefing.

Rodman's interpretation of the Employment Contract as set forth in his motion for summary judgment simply is not consistent with the express language of the writing itself.  Furthermore, Rodman has presented no evidence that, prior to its discontinuation, the Rewards Program had been interpreted or administered based upon the theory he suggests and notwithstanding the sufficiently clear description of the program in the Employment Contract.  Therefore, even if this motion could not be resolved as a matter of law and we allowed parol evidence, his claim would fail because he has presented no such relevant evidence but rather only his speculation as to the meaning of the provision.[11]  In addition, his motion fails to present any evidence as to the basis for the sum of unpaid rewards he claims, $12,500.  (Rodman Mot. Summ. Jmt. [Doc. 92] ¶ 8.)  We cannot grant him judgment on a breach of contract claim where we have only his unsupported assertion as to an amount of damages.  We conclude that Rodman has not met his burden, as the party affirmatively seeking summary judgment on his breach of contract claim, to show that he is entitled to judgment as a matter of law, *see* Fed. R. Civ. Proc. 56(c), in the amount of "$12,500 in unpaid bonus pay" (*see* Rodman Mot. Summ. Jmt. [Doc. 92] ¶ 8), nor in any amount, given that the contract on which he bases his claim does not reflect that ISS agreed to make additional payments to him under the "REWARDS incentive program" based simply upon the fact that he was assigned to and did perform

---

[11]  We also note that the basis of and evidentiary support for Rodman's claim of an entitlement to further Rewards payments appears to have changed over time.  At his deposition, Rodman suggested that his interpretation of this contractual provision is bolstered by the fact that he and his supervisor believed that they had been receiving payments under the Rewards Program for successful project work.  He did not advance this theory, however, in his summary judgment filings.  Moreover, he has not pointed to any evidence that he received payments based merely on successful completion of a project; he has not challenged the documentation ISS submitted pertaining to the genesis of the various bonus payments it made during the ten quarters that Rodman worked at ISS before the program was discontinued at the end of 2003; and he has not come forward with any other evidence that the program was used for anything other than to reward employees for generating new business.

work on projects as an employee of ISS.  Therefore, Rodman's motion for summary judgment will be denied.

ISS, however, is entitled to summary judgment on this claim.  In its motion, it has pointed to the absence of evidence supporting Rodman's position, that is, the deficiencies in the contract language that render unreasonable any interpretation other than the view that the Rewards Program provided for bonuses based on contract lead generation.  In so doing, and through the supporting affidavit of Uricchio asserting that Rodman did not generate any leads for new contracts after his final bonus payment in July 2002, ISS shifted the burden to Rodman to show that there remained some genuine factual issue for trial that precluded the entry of judgment as a matter of law in favor of ISS.  Rodman has not, however, come forward with any evidence disputing this assertion.  As a result, ISS is entitled to summary judgment on Rodman's breach of contract claim regarding his alleged entitlement to additional bonus payments pursuant to this portion of the Employment Contract.[12]

C.     **WPCL Claims**

In the second count of his counterclaim, Rodman contends that ISS's failure to have paid him the incentive commissions to which he believes he is entitled constitutes a failure to pay wages earned by and due to him, in violation of the WPCL.  His third party complaint against Uricchio is based on the same theory, seeking damages against Uricchio individually under the provision of the WPCL that broadly defines an "employer" subject to that act to include "any agent or officer" of a

---

[12] In light of this finding, we do not consider it necessary to address ISS's alternative argument regarding Rodman's acquiescence to modification of the terms of employment due to the fact that he continued his employment with ISS long after the discontinuation of the Rewards Program.

corporation that employs the employee.  Rodman's theory of liability in both counts is that ISS and Uricchio violated the WPCL by not paying to him the unpaid incentive commissions.  (Am. Countercl.[Doc. 36] ¶¶ 12-13; Third Party Compl. [Doc. 36] ¶¶ 17-18.)  He does not assert that there were any other fringe benefits, wage supplements, or base pay that was earned but not paid to him, nor does he seek in his counterclaim and third party complaint any damages based on any other provision of the WPCL.[13]

It is well established that the WPCL does not create an independent right to compensation but rather provides a statutory remedy through a private cause of action when an employer breaches a contractual obligation to pay earned wages or benefits.  It is the contract between the parties that governs the determination of whether specific "wages" or benefits were "earned."  *See, e.g., DeAsencio v. Tyson Foods, Inc.*, 342 F.3d 301, 309 (3d Cir. 2003); *Oberneder v. Link Computer Corp.*, 696 A.2d 148, 150 (Pa. 1997); *Kafando v. Erie Ceramic Arts Co.*, 764 A.2d 59, 61 (Pa. Super. Ct. 2000).  We have already determined that no reasonable jury could find that Rodman had a contractual right to additional compensation simply based upon the performance of his duties as a field service technician.  A jury thus could not reasonably find that he "earned" any "wages" that remain unpaid.  As a result, his WPCL claims, against both ISS and Uricchio, fail as a matter of law. *See also Dardaris v. Dental Org'n for Conscious Sedation*, Civ. A. No. 06-947, 2007 WL 1300235, *4-5 (E.D. Pa. May 3, 2007) (granting summary judgment to employer on WPCL claim where employee produced no evidence of earning of commissions she claimed remained unpaid); *Fetter*

---

[13] Rodman does suggest in his motion for summary judgment that ISS violated the WPCL by failing to notify him of a change in written terms of employment.  Whether or not this constitutes a violation of the WPCL, we deem it to be a moot point in light of the uncontested assertion by ISS that Rodman did not generate any leads for ISS after receiving his third and final reward payment in July 2002.

*v. North American Alcohols, Inc.*, Civ. A. No. 06-4088, 2008 WL 5187877, *6 (E.D. Pa. Dec. 10, 2008) (granting summary judgment to company on WPCL claim where prospective employee had no binding contract with company and no wages were contractually due to him).   Rodman's counterclaim and third party complaint will be dismissed in their entirety.

## III.    ISS'S MOTION FOR VOLUNTARY DISMISSAL

On November 12, 2008, ISS moved for an order of dismissal pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure.  It seeks to dismiss its complaint against Rodman (presumably really the *amended* complaint) because it "has now determined that it would be counterproductive to proceed further with this case in light of the substantial additional costs involved."  (Mot. Vol. Dism. [Doc. 87] ¶ 5.)  ISS requests that the order dismissing the complaint against Rodman specify that it is a dismissal "without prejudice."  (*Id.* ¶ 10 & Prop. Order.)[14]

Rodman's opposition to this motion appears to reflect his belief that the Court should first sanction ISS and its counsel pursuant to Rule 11 of the Federal Rules of Civil Procedure before dismissing ISS's action in light of what he contends was a failure to investigate the allegations in the complaint and what he characterizes as litigation decisions reflecting that ISS and its counsel "acted with malice in an attempt to harass and defame [Rodman's] character in the industry."  (Resp. to Pl.'s Mot. Vol. Dism. [Doc. 93] at 8.  *See also id.* at 1 ("Prior to dismissal of the Plaintiff's complaint, Dennis Rodman requests this court seek sanctions on Integrated Service Solutions, Inc. and counsel.").)  He challenges the rationale given for ISS's change in course: he claims that

---

[14] ISS sought Court approval of its request to dismiss in light of the advanced stage of this case which, pursuant to the Federal Rules of Civil Procedure and as explained further below, precludes voluntary dismissal by the plaintiff without a Court order unless all parties agree.  ISS was unable to obtain Rodman's consent to a stipulation of voluntary dismissal on the terms sought by ISS.  (Mot. Vol. Dism. [Doc. 87] at ¶¶ 8, 9.)

whatever limitations there might be in his financial resources were essentially present earlier and therefore interprets an averment in ISS's motion concerning its determination that the costs of litigation were not warranted given Rodman's "limited financial resources" to constitute "an admission of guilt" with regard to ISS's intent in the litigation.  (*Id.* at 2.)  He also points to various other discovery items that he believes demonstrate that ISS did not adequately investigate either the basis for terminating his employment in 2006 or for this lawsuit that it initiated against him in 2007. (*Id.* at 2-8.)  He does not make any objection *per se* to the discontinuation of the action against him, nor the proposal that it be a dismissal "without prejudice."  In fact, he concludes his response to ISS's motion for voluntary dismissal with a request that the Court "dismiss this case without prejudice," but to do so after entering "sanctions" against ISS and the firm representing it in this matter in the amount of $85,075, "the legal fees generated" by him to date.  (*Id.* at 9.) We first address Rodman's request for sanctions pursuant to Rule 11 and then discuss the propriety of dismissing ISS's action on the terms it seeks.

### A.     Rule 11 Sanctions

Rule 11 of the Federal Rules of Civil Procedure provides in relevant part:

> Rule 11. Signing Pleadings, Motions, and Other Papers; Representations to the Court; Sanctions
> (a) SIGNATURE.
> *      *      *
> (b) REPRESENTATIONS TO THE COURT.  By presenting to the court a pleading, written motion, or other paper — whether by signing, filing, submitting, or later advocating it — an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

(c) SANCTIONS.

(1) In General.  If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. . . .

(2) Motion for Sanctions.  A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b).  The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. . . .

\*        \*        \*

Fed. R. Civ. Proc. 11.  Pursuant to this rule, the request that the court impose Rule 11 sanctions must be made in a separate motion from any other request or filing, which cannot be filed with the court until at least 21 days after service of the motion on the party against whom sanctions are sought.

Rodman has not adhered to either of these precepts.  His request for Rule 11 sanctions was contained within his "Response to the Plaintiff's Motion for Voluntary Dismissal Pursuant to Fed. R. Civ. P. 41(a)(2)."  (Doc. 93 at 1.)  His filing does not demonstrate that he first served upon ISS any Rule 11 motion, nor has he challenged ISS's contention that he has not done so.  Accordingly, we will deny Rodman's request that we impose against ISS and its counsel sanctions pursuant to Rule 11.  *See, e.g, Omega Sports, Inc. v. Sunkyong Am., Inc.*, 872 F. Supp. 201, 203 (E.D. Pa. 1993) (concluding that an award of Rule 11 sanctions "would be unwarranted" where party failed to

18

comply with separate motion rule and safe harbor provision).

**B.    Voluntary Dismissal**

Rule 41 of the Federal Rules of Civil Procedure provides in relevant part:

> (a) VOLUNTARY DISMISSAL.
> (1) *By the Plaintiff.*
> (A) *Without a Court Order.*  Subject to Rules 23(e), 23.1(c), 23.2, and 66 and any applicable federal statute, the plaintiff may dismiss an action without a court order by filing:
> (i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or
> (ii) a stipulation of dismissal signed by all parties who have appeared.
> (B) *Effect.*
>     \*      \*      \*
> (2) *By Court Order; Effect.*  Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper.  If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication. Unless the order states otherwise, a dismissal under this paragraph (2) is without prejudice.
>     \*      \*      \*

Fed. R. Civ. Proc. 41.  Given that Rodman has answered ISS's complaint and did not consent to a stipulation of dismissal when proposed by ISS, ISS's request is governed by Rule 41(a)(2).

Pursuant to Rule 41(a)(2), where the defendant has asserted a counterclaim and objects to the dismissal of the action, the Court may nonetheless dismiss the complaint if it considers it proper and "if the counterclaim can remain pending for independent adjudication."  In this case, however, we have already determined that the counterclaim must be dismissed.  Therefore, in assessing the propriety of the dismissal of ISS's action, we need not assess the viability of the counterclaim as an independent action, e.g., as a compulsory counterclaim or an action satisfying diversity jurisdiction requirements.

We have concerns, however, with ISS's proposal that its complaint be dismissed "without prejudice." ISS does not provide any basis for this request other than to point to the fact that it is permissible under the Rule and because it does not believe that Rodman would be prejudiced by a dismissal "without prejudice."[15] ISS states in its motion that "part of [its] motivation in moving for voluntary dismissal at this stage of the proceedings is to avoid the expense of trial and preparation for trial," (Br. in Supp. Mot. Vol. Dism. [Doc. 87-2] at 4), yet it is apparently wishes to preserve whatever option it may have of reviving the claim. While ISS suggests that "Rodman will benefit from the voluntary dismissal of the Complaint against him" because "[h]e will be free to go on with his life," (*id.*), that freedom would be encumbered by the implicit threat of a revived lawsuit.

ISS is correct that Rule 41(a)(2) permits a dismissal without prejudice "unless the order states otherwise" and that dismissal is generally allowed in the absence of plain legal prejudice to the defendant. We also certainly appreciate, as ISS reminds us (*id.* at 3), that the question of whether to grant dismissal pursuant to Rule 41(a)(2) "lies within the sound discretion of the court." *See, e.g., Sinclair v. Soniform, Inc.*, 935 F.2d 599, 603 (3d Cir. 1991). The court must, however, exercise, not abdicate, its discretion. The Rule provides that the dismissal be "on terms that the court considers proper." As the Third Circuit has recognized, a dismissal request that falls under Rule 41(a)(2), after answers have been filed, can present a very different situation than a dismissal at the stage addressed by Rule 41(a)(1), as it is "an increasingly burdensome matter to one's opponent if a case has been prepared, trial date set and the party and his witnesses on hand and ready for trial." *Ferguson v.*

---

[15] In its Reply brief, ISS also suggests that we grant the motion for voluntary dismissal as unopposed. (ISS Reply [Doc. 94] at 1.) Although Plaintiff ultimately requests in his response that the Court dismiss ISS's complaint without prejudice, he does not appear to be consenting to the withdrawal without the condition of sanctions. Therefore, we will not take ISS up on its suggestion.

*Eakle*, 492 F.2d 26, 28 (3d Cir. 1974) (quoting *Ockert v. Union Barge Line Corp.*, 190 F.2d 303, 304 (3d Cir. 1951)).  *See also id.* at 29 (finding district court abused discretion in permitting voluntary dismissal of complaint two months after close of discovery where defendants sustained "emotional and psychological trauma" preparing for trial in federal court and then having case re-filed against them in state court).  We believe a motion for dismissal without prejudice requires particular attention from the court, given that the dismissal would not necessarily protect the defendant from relitigation and the cost of incurring counsel fees yet again.

In considering such a request, we thus assess: (1) whether the dismissal should be allowed at all; (2) whether it is appropriate that it be without prejudice; and (3) whether any terms or conditions are appropriate.  Factors to consider as to the propriety of dismissal generally include: (a) whether motions for summary judgment have been filed; (b) the extent of the defendant's efforts and expenses in preparing for trial; (c) excessive expenses in defending a second action; and (d) the sufficiency of the explanation for dismissal by the plaintiff.  *See Horizon Unlimited, Inc. v. Richard Silva & SNA, Inc.*, Civ. A. No. 97-7420, 1999 WL 675469 (E.D. Pa. Aug. 31, 1999) (Shapiro, J.).  *See also Ferguson*, 494 F.2d at 29 (finding an abuse of discretion where complaint dismissed when case ready for trial).  *Cf. Sinclair v. Soniform, Inc.*, Civ. A. No. 89-5675, 1991 WL 126725 (E.D. Pa. July 9, 1991) (granting voluntary dismissal without prejudice to continue identical case pending in state court where discovery in both courts was "in its infancy").

We are prepared to accept that dismissal of the complaint in this matter is proper, as we see no reason to force ISS to proceed with this matter if it does not wish to.  We note also that the parties appear to have suspended their trial preparation activities since the filing of ISS's motion.  ISS has provided a facially valid reason for seeking to withdraw the action, citing the "substantial additional

costs" associated with: (1) obtaining a further report from the company that performed the forensic examination of a laptop computer that ISS believed might contain evidence of the allegedly improper activities of Rodman, and (2) trial and preparation for trial.  (Mot. for Vol. Dism. [Doc. 87] ¶¶ 3-5; Br. in Supp. of Mot. Vol. Dism. [Doc. 87-2] at 4.)  ISS also represents that it has determined that "the benefit it can achieve from this proceeding is limited, particularly in light of Rodman's limited financial resources."  (Mot. for Vol. Dism. [Doc. 87] ¶ 7.)  Rodman has not identified any other evident purpose motivating ISS's dismissal request, such as to refile in a different forum or to cure some defect in its pleadings.  Therefore, it does not appear to us that ISS is using the voluntary dismissal option to substitute for an adjournment of a scheduled trial or to thwart discovery deadlines.  ISS further urges the Court not to impose any conditions regarding the dismissal because Rodman "admittedly misused ISS's emails" and because "there is no question that he wrongfully forwarded confidential emails in violation of company policy."  (Br. in Supp. of Mot. Vol. Dism. [Doc. 87-2] at 3, 4.)  In its reply brief, ISS also refers us to the testimony given by an ISS representative, Catherine Peetros, in an earlier hearing in this matter, which explored some of the evidence of the conduct attributed to Rodman upon which this complaint was based.  (*See* ISS Reply [Doc. 94] at 2 n.1.)

We believe it appropriate to construe Rodman's response to the motion for voluntary dismissal as reflecting his objection to a dismissal that is not conditioned on payment of his costs expended in defense of ISS's suit against him.  We believe it is also clear that ISS's reply reflected its objection to a dismissal conditioned on payment of counsel fees.[16]  We recognize that over the

---

[16] We observe that the record before us is undeveloped as the amount of attorneys' fees and costs that are fairly attributable to the defense of this matter as opposed to the prosecution of Rodman's counterclaim or other potentially irrelevant matters.  We note that Rodman seeks $85,075

years, courts have established a number of exceptions to the American Rule pursuant to which each

party ordinarily bears its own costs of litigation.  One of the exceptions authorizes a federal court to

award counsel fees to a successful party "when his opponent has acted 'in bad faith, vexatiously,

wantonly, or for oppressive reasons.'"  *Hall v. Cole*, 412 U.S. 1, 5 (1973).  This power was later

determined by the Supreme Court to cover both litigants and their counsel.  *See Roadway Express,*

*Inc. v. Piper*, 447 U.S. 752, 766 (1980).  "Bad faith" is established where there is "indication of an

intentional advancement of a baseless contention that is made for an ulterior purpose, e.g.,

harassment or delay."  *Ford v. Temple Hospital*, 790 F.2d 342, 347 (3d Cir. 1986).  We have

considered the contentions made by Rodman in support of his request for sanctions.  He posits that

the claims against him were "frivolous in nature since the onset of the case" and that the litigation

was used to "harass[] and tamper with business associates" of Rodman and his wife.  (Doc. 93 at 2.

*See also id.* at 6.)  He points to allegations contained in the complaint that he contends were

ultimately discredited through the discovery process and accuses ISS of having made "no attempt

to verify the validity of" accusations made against him prior to filing the complaint.  (*Id.* at 6.)

    We have considered the instances cited by Rodman.  At ISS's suggestion in its response to

Rodman's sanctions request, we have also considered the testimony of ISS executive Catherine

Peetros that was offered earlier in this matter that touched upon legitimate concerns ISS had about

the damages caused by certain conduct attributable to Rodman.  We recognize that the litigation of

this matter became somewhat protracted in that disputes arose as to the handling of commercially-

---

in sanctions for ISS's litigation against him, but seeks the exact same amount for attorneys' fees in
his summary judgment motion relative to his counterclaim.  It is unclear whether it is pure
coincidence that he expended the same amounts on his defense as on his affirmative litigation or
whether he was seeking to recoup his entire expenditure through one of two possible avenues.

sensitive information and the obligations of third parties, including other companies in the industry with whom both ISS and Rodman might have particular reputational interests. We cannot say, however, that ISS or its counsel handled this case in such a way as to suggest "intentional advancement of a baseless contention" or any improper purpose. *See, e.g., Ford*, 790 F.2d at 347. Therefore, an award to Rodman of counsel fees incurred by him in defense of ISS's lawsuit would not be an appropriate exercise of the Court's equitable powers.

ISS is clearly concerned principally with the dismissal of its case and does not appear to have any interest, legitimate or otherwise, in preserving any right to relitigate this matter against Rodman. While Rodman is clearly concerned principally with recovery of his costs, he has not met his burden to show that sanctions related to his counsel fee expenditure would be appropriate under the circumstances of this case. We will therefore permit the dismissal and at the same time deny Rodman's request that he be awarded counsel fee. We will, however, give Rodman the peace of mind of having this matter put completely behind him and require that the dismissal to be with prejudice.

## IV.    CONCLUSION

For the reasons set forth above, we will grant ISS and Uricchio's motion for summary judgment as to Rodman's counterclaim and third party complaint, deny Rodman's motion for summary judgment as to the same claims, deny Rodman's his request for imposition of sanctions against ISS and its counsel, and dismiss with prejudice ISS's amended complaint against Rodman.

24

An appropriate Order will accompany this opinion.


BY THE COURT:


/s/ David R. Strawbridge
DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE